**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANET ROSS, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>BAREBONES VENTURES, LLC,<br>Defendant. | Civil Action No.:<br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Janet Ross ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Barebones Ventures, LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action lawsuit on behalf of purchasers of Bare Bones Bone Broth products (the "Bone Broth Product" or the "Product") against Defendant for manufacturing, marketing, selling, and distributing mislabeled bone broth products. The marketing and advertising of the Bone Broth Product contains misleading claims relating to the net weight of the Product, the serving size of the Product, and the amount of protein in the Product. An example of the product is pictured on the proceeding page. *See* Figure 1, next page.




Figure 1

2. Defendant engages in widespread false and deceptive advertising in connection with its Bone Broth Product. It causes unsuspecting customers to pay for a product that they are led to believe contains more protein per standard serving than other bone broth products on the market.

3. First, Defendant mislabels its products' net weight on its packaging label. Under United States Food and Drug Administration (the "FDA") regulations, the principal display panel of a good in package form must bear a declaration of the net quantity of contents. *See* 21 C.F.R. § 101.7(a) (2025). For liquid products, such as bone broth, the statement must be in terms of fluid measure in the largest whole unit with any remainder in terms of fluid ounces or

common or decimal fractions of the pint or quart. *See id.; see id.* § 101.7(j)(1). Defendant instead provides a statement on the front of its packaging that declares its net quantity of contents as "16 OZ (1 LB) (454 G)," using fluid ounces in addition to grams, which is not permitted pursuant to the FDA's regulation.[1] *See* Figure 2, below.




Figure 2

4. Second, Defendant labels its products' serving sizes and the protein per serving to fall under the FDA's Reference Amounts Customarily Consumed ("RACCs"). These RACCs establish standard serving sizes for different types of food items. The RACC guideline for soups, which is where bone broth is categorized, establishes a standard serving size of 245 grams, or 8 ounces. *See* 21 C.F.R. § 101.12(b) (2025).

5. In an administrative guidance document, the FDA provided non-binding labeling recommendations for "Single-Serving Containers that Contain More Than 150% and Less Than 200% of the RACC[.]"[2] In this section, the FDA permits manufacturers of single-serving containers that contain more than 150% and less than 200% of their items' RACC to voluntarily provide an additional column in the Nutrition Facts label.

6. Despite the FDA's guidance only intending to permit additional labeling for specific manufacturers, some manufacturers use it to ignore their standard serving size RACC and label their product as a "Single-Serving Container." This is the case for Defendant, who

[1] Plaintiff is not bringing any claims under the FDA's regulations, but points to them only to support her allegations that Defendant avoided customary market conditions and that a reasonable consumer would be deceived by Defendant's misleading labeling scheme.
[2] *See* https://www.fda.gov/media/111144/download.

labels its product as containing a net quantity of contents of 454 grams, which is more than 150% and less than 200% of the 245 grams RACC established by the FDA for soups. Because of this, Defendant states on the Nutrition Facts label of its Product that the serving size is "1 container." *See* Figure 3, below.




Figure 3

7. By misrepresenting its serving size on the packaging, Defendant misleads customers into believing its Bone Broth Product contains more protein per standard serving than other bone broth products. Defendant advertises the protein content in the Bone Broth Product as 20 grams on the front and back of the packaging, which substantially skews the amount of protein in the Product to look higher due to the inflated serving size. *See* Figures 4 and 5, below.




Figure 4




Figure 5

8. Defendant's labeling capitalizes on consumers' desire for higher protein content in their food products. In a 2024 study of 3,000 adults in the United States, 71% said they were trying to consume more protein, which is a 12% increase from 2022.[3] A separate 2025 report noted that protein remains the "most universally sought ingredient/nutrient in consumers' approaches to food."[4]

9. Thus, reasonable consumers seeking higher protein content in their food products will choose Defendant's Product over other similar products if they rely on the misleading representation that its protein per standard serving is comparatively higher. This is misleading because the protein content is based on a serving size well beyond the RACC. A reasonable consumer, like Plaintiff, is led to believe a standard serving would amount to 20 grams of protein—when in actuality, the entire container amounts to 20 grams. A similar product that accurately states on its packaging that it contains 15 grams per serving, based on a RACC compliant serving size of 8 ounces, seemingly contains less protein per serving to the reasonable consumer. In reality, the entire package contains double the amount of protein than Defendant's Bone Broth, which is overlooked by the reasonable consumer. *Compare* Figure 6 *with* Figure 7, next page.

---

[3] *See* https://www.nytimes.com/2025/04/09/well/eat/protein-fact-check.html.
[4] https://www.cargill.com/doc/1432277049818/the-2025-protein-profile.pdf.




Figure 6




Figure 7

10. Plaintiff, the Class, and Subclass Members relied to their detriment on Defendant's unclear and misleading representations on its Bone Broth Product regarding the amount of protein in every container. Plaintiff, Class, and Subclass Members would not have purchased Defendant's Bone Broth Product—or would not have paid as much as they did to purchase it—had Defendant complied with industry standards to provide a more accurate picture of the protein content in a standard serving. As such, Plaintiff and Class Members paid a price premium for a Product they were led to believe contained more protein per standard serving in comparison to competitor products. *Compare* Figure 8 *with* Figure 9, next page.




Figure 8




Figure 9

11. Plaintiff and Class Members were thereby injured by paying a price premium for the Product over competing bone broth products that complied with federal regulations pertaining to serving size and represented their protein content based on their actual serving size. Plaintiff and Class and Subclass Members thus suffered monetary damages as a result of Defendant's deceptive and false representations and omissions.

12. Finally, as an example of Defendant's deceptive representations, Defendant's website includes a recipe for golden beet and bone broth overnight oats that requires eight ounces (which according to Defendant's packaging is half of a single serving) of Chicken Bone Broth yet according to Defendant serves four people.[5]

[5] https://www.barebonesbroth.com/blogs/recipes/golden-beet-and-bone-broth-overnight-oats

## PARTIES

13. Plaintiff Janet Ross is a citizen of New York. She resides in Suffolk County, New York. In or around May 2025, Ms. Ross purchased one container of Bare Bones' Organic Chicken Bone Broth manufactured by Defendant from Stop & Shop. When Ms. Ross made her purchase, she believed that the Product contained a heightened amount of protein because she saw the Bone Broth Product was labeled as containing 20 grams of protein per serving on the packaging. Ms. Ross saw this representation prior to, and at the time of purchase, and relied on this misleading representation in purchasing the Bone Broth Product. The Product Ms. Ross purchased contained an inflated serving size and included a representation that the product contained 20 grams of protein per serving on the packaging. The protein content was material to Ms. Ross, and had she known that the protein content in the Product reflected that of an inflated net quantity of contents and serving size, she would not have purchased the Product or would have paid significantly less for it.

14. Defendant Barebones Ventures, LLC, is a Delaware limited liability company with its principal place of business at 2307 Fenton Pkwy, Suite 107-616, San Diego, California 92108. Defendant manufactures, markets, sells, and distributes the Bone Broth Product throughout the United States and the State of New York. Defendant sold the Product with the aforementioned representations during the class period.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of the proposed class exceed $5,000,000.00, exclusive of interests and costs, there are over 100 members of the

putative class, and Plaintiff, as well as many members of the proposed class, is a citizen of a state different from Defendant.

16. This Court has personal jurisdiction over Defendant. Defendant does business in New York and has sufficient minimum contacts with this state, including within this District, and/or has otherwise intentionally availed itself of the New York consumer market through the promotion, marketing, and sale of its products to residents within this District and throughout New York. Additionally, Plaintiff purchased her Bone Broth Product in New York.

17. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff resides in and purchased Defendant's Bone Broth Product in this District. Moreover, Defendant distributed, advertised, and sold the Bone Broth Product to the members of the Class, which is the subject of the present complaint, in this District.

## CLASS ALLEGATIONS

18. **Nationwide Class Definition:** Plaintiff Ross seeks to represent a class of similarly situated individuals defined as all persons in the United States who purchased a Bare Bones Bone Broth Product labeled with a net weight of 454 grams and to contain twenty grams of protein per serving during the applicable statute of limitations period (the "Nationwide Class").

19. **New York Subclass Definition:** Plaintiff Ross seeks to represent a subclass consisting of all Class Members who purchased a Bare Bones Bone Broth Product labeled with a net weight of 454 grams and to contain twenty grams of protein per serving in the State of New York during the relevant statute of limitations period (the "New York Subclass").

20. The Nationwide Class and New York Subclass are collectively referred to as "Classes." Subject to additional information obtained through discovery and further investigation, the above-described Classes may be modified or narrowed as appropriate.

21. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Classes. Although the precise number of Class Members is unknown to Plaintiff, the true number of Class Members is known by Defendant and may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

22. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** A well-defined community of interest exists in the questions of law and fact involved in this case. Questions of law and fact common to the Members of the Classes that predominate over questions that may affect individual Members of the Classes include:

(a) whether the marketing, labeling, and advertisements for the Bone Broth Product were false and misleading;

(b) whether Defendant's conduct was unfair and/or deceptive; and

(c) whether Plaintiff and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

23. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Classes because Plaintiff, like all Members of the Classes, were exposed to Defendant's false and

misleading marketing, purchased the Bone Broth Product in reliance on Defendant's false and misleading representations, and suffered a loss as a result of that purchase.

24. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Classes. Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiff has raised viable common-law and statutory claims of the type reasonably expected to be raised by Members of the Classes and will vigorously pursue those claims.

25. **Superiority (Fed. R. Civ. P. 23(b)(3)):** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**

**Violation Of New York's Gen. Bus. Law § 349**

**(On Behalf Of The New York Subclass)**

26. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

27. Plaintiff Janet Ross brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

28. Defendant has violated, and continues to violate, § 349 of the New York General Business Law ("GBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of § 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

29. Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the protein content of its Bone Broth Product to mislead consumers into believing the Product has a greater protein content than similar competitor bone broth products.

30. Plaintiff Ross has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased the Bone Broth Product for her personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Bone Broth Product had an elevated protein content compared to similar competitor products. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

31. Defendant's deceptive acts and practices were directed at consumers, and Defendant's labeling induced Plaintiff to buy the Product.

32. Defendant packaged the Product with labeling containing misleading representations willfully, wantonly, and with reckless disregard for the truth.

33. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations. By inflating the protein per serving, Defendant proves that the amount of protein in bone broth products is material to consumers. If Defendant had advertised its Bone Broth Product truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Product or would not have paid as much as they did for them.

34. Plaintiff and the New York Subclass members have been injured by their purchase of the Product, which were worth less than what they bargained and/or paid for, and which they selected over other products that may have been truthfully marketed.

35. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

36. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

**COUNT II**

**Violation Of New York's Gen. Bus. Law § 350**

**(On Behalf Of The New York Subclass)**

37. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

38. Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

39. As alleged above, Defendant engaged in a campaign of false advertising with regard to the protein content of its Bone Broth Product to mislead consumers into believing the Bone Broth Product they purchased contained more protein than similar competitor products.

40. Plaintiff Ross has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased the Bone Broth Product for her personal use. In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Bone Broth Product had an elevated protein content compared to similar competitor products. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

41. GBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service is hereby declared unlawful." GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity …. if advertising is misleading in a material respect."

42. When determining whether advertising is misleading, GBL § 350-a requires not only taking into account "representations made by statement …. but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual" (emphasis added).

43. Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations when purchasing a product for its protein content. By exploiting regulatory requirements and guidance to make its misleading representations, Defendant abandoned customary market conditions resulting in its Product appearing superior in protein per serving to other products. If Defendant had advertised its Bone Broth Product truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased the Product or would not have paid as much as they did for it.

44. Defendant's deceptive acts and practices were directed at consumers.

45. Defendant's conduct led to direct, foreseeable, and proximate injury to Plaintiff and New York Subclass Members.

46. As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

47. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and

New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Fraud**
**(On Behalf Of The Classes)**

48. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

49. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

50. As alleged above, Defendant provided Plaintiff and Class Members with false or misleading material information about the Bone Broth Product manufactured, marketed, sold, and distributed by Defendant, including that it contains more protein content in a standard serving than similar competing products.

51. These misrepresentations were made with knowledge of their misleading nature and with specific intent to deceive consumers. Defendant's knowledge and intent are evidenced by the following particular circumstances:

(a) Defendant deliberately designed its 454-gram bone broth containers to fall within the narrow FDA guidance window of more than 150% and less than 200% of the established 245-gram RACC for soup products, thereby enabling Defendant to claim the entire container as a single serving;

(b) Defendant knew that the standard industry practice and FDA regulation required soup products to use 8-ounce (245-gram) serving sizes for nutritional

comparisons;

(c) despite this knowledge, Defendant intentionally chose to label its 16-ounce product as "1 container" serving size and prominently display "20 grams of protein" on both the front and back packaging, knowing that consumers would compare this figure to competitors' products that properly used 8-ounce serving sizes;

(d) Defendant's marketing and labeling decisions continued through the class period, during which time Defendant sold products bearing these misleading representations;

(e) Defendant knew that reasonable consumers seeking high-protein bone broth products would rely on the "20 grams of protein" representation without understanding that this figure represented twice the standard serving size used by properly labeled competitors; and

(f) Defendant intended to gain a competitive advantage by making its protein content appear superior to competitors' products that truthfully labeled their protein content per standard 8-ounce serving.

52. These misrepresentations made by Defendant, upon which Plaintiff and Members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class Members to purchase the Bone Broth Product.

53. The fraudulent actions of Defendant caused damage to Plaintiff and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Classes and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an order declaring Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiff and the Classes their reasonable attorney's fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: July 15, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *__/s/ Joseph I. Marchese__*

Joseph I. Marchese
Julian C. Diamond
Spencer N. Migotsky (*Pro Hac Vice forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
jdiamond@bursor.com
smigotsky@bursor.com

*Attorneys for Plaintiff*