**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Janet Ross, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>-v-<br><br>Barebones Ventures, LLC<br><br>Defendants. | 2:25-cv-3929 (NJC) (LGD) |

**ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Janet Ross filed this proposed class action against Barebones Ventures, LLC ("Barebones"), alleging that Barebones manufactures, markets, sells, and distributes bone broth products (the "Products") that are mislabeled and contain misleading claims about the Products' protein content. (Compl., ECF No. 1 ¶ 1.) The Class Action Complaint brings deceptive acts and practices claims under New York General Business Law ("N.Y. Gen. Bus. L.") § 349 ("Section 349") (*id.* at ¶¶ 26–36), false advertising claims under N.Y. Gen. Bus. L. § 350 ("Section 350") (*id.* at ¶¶ 37–47), and fraud claims under New York common law on the basis that Barebones mislabels the Products with knowledge of their misrepresentations with specific intent to deceive customers (*id.* ¶¶ 48–53).

On September 24, 2025, Barebones filed a letter seeking a conference to discuss its anticipated motion to dismiss the Class Action Complaint. (ECF No. 14.) On September 25, 2025, the Court waived its pre-motion conference requirement and scheduled briefing on the motion. (Elec. Order, Sept. 25, 2025.) Pursuant to this Court's recommended bundling practice,

Barebones' motion to dismiss the Class Action Complaint (Mem. ISO Mot. Dismiss ("MTD"), ECF No. 18-1), Ross's opposition (Mem. in Opp. ("MTD Opp."), ECF No. 18-2), and Barebones' reply (Reply ("MTD Reply"), ECF No. 18-3) were filed on November 13, 2025.

Barebones moves to dismiss the Class Action Complaint on four separate grounds. First, it argues that Ross's claims are federally preempted by the Food, Drug, and Cosmetic Act (the "FDCA"), 21 U.S.C. §§ 301–399 et seq., as amended by the Nutrition Labeling Education Act ("NLEA"), Pub. L. No. 101-535, 104 Stat. 2353 (1990), which prohibits the misbranding and mislabeling of food and explicitly preempts any state law regulations that conflict with its mandate. (MTD at 4–6.) Second, Barebones contends that the Class Action Complaint fails to state plausible claims under Section 349 and Section 350 because the Product's labeling is not likely to deceive a reasonable consumer and is therefore not materially misleading. (*Id*. at 6–12.) Third, Barebones argues that Ross's fraud claim must be dismissed for failure to meet the heightened pleading standard for fraud cases set forth in Rule 9, Fed. R. Civ. P. (*Id*. at 13–17.) Fourth, Barebones argues that Ross does not have standing to bring this action on behalf of individuals who purchased products manufactured by Barebones other than the specific Bare Bones Organic Chicken Bone Broth that Ross purchased, and that she lacks standing to pursue injunctive relief because the Class Action Complaint does not allege that Ross intends to purchase the Products in the future. (*Id*. at 17–20.)

On May 15, 2026, I referred Barebones' motion to dismiss the Class Action Complaint to Magistrate Judge Lee G. Dunst for a written report and recommendation. (Elec. Order, May 15, 2026.) On July 28, 2026, Judge Dunst issued a Report and Recommendation (the "R&R") recommending a grant of Barebones' motion to dismiss the Class Action Complaint. (R&R, ECF

No. 26.) Specifically, Judge Dunst recommends a finding that Ross's Section 349, Section 350, and fraud claims are "nutrient content" claims that are preempted by the FDCA because they seek to impose nutrient content labeling obligations beyond the FDCA's requirements. (*Id*. at 6–11.) Judge Dunst further recommends that, even if the claims are not preempted, the Class Action Complaint should be dismissed for failure to state any plausible claims for relief because the Products' front packaging is not plausibly misleading, particularly when read in conjunction with the Products' nutrition labels. (*Id*. at 12.) Finally, Judge Dunst recommended dismissing Ross's claims with prejudice because any construction of the claims, all of which concern nutrient labeling, would be preempted by the FDCA, and thus the deficiencies in the claims cannot be cured by an amended complaint. (*Id*. at 13.)

A copy of the R&R was filed and served on counsel electronically on July 28, 2026. (*See id*. at 26.) The R&R instructed that any objections to the R&R must be submitted in writing to the Clerk of Court within fourteen (14) days of service, *i.e.*, by August 11, 2026. (*Id*.)

The date for filing any objections has thus expired, and no party has filed an objection to the R&R. In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no objections are filed, a district court reviews a report and recommendation for clear error. *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349 (2d Cir. 2025) ("If a party fails to properly object to the R&R, the district judge reviews the R&R only for clear error."); *see also Salome v. Metro Cheese Inc*., No. 24-cv-4659, 2025 WL 3282755, at *2 (E.D.N.Y. Nov. 25, 2025).

Because a motion to dismiss is dispositive, and because no party has filed timely objections to the R&R, I may review the R&R for clear error. Having conducted a review of the motion papers and the applicable law, and having reviewed the R&R *de novo* out of an abundance of caution, I adopt the R&R in its entirety and add the following analysis.

Barebones argues in its motion to dismiss that Ross lacks standing to bring certain claims. (*See* MTD at 17–21.) The R&R did not resolve the standing questions, but instead recommended dismissal of all claims on the basis of federal preemption and, in the alternative, for failure to state a claim under Rule 12(b)(6). (*See* R&R at 5–12.) However, a court is required to consider a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *See Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-3234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

Barebones argues that Ross lacks individual standing because the Class Action Complaint fails to allege that she suffered any injury, that Ross lacks class standing to assert claims on behalf of consumers who purchased Barebones' products other than the specific bone broth product that Ross purchased, and that she lacks standing to seek injunctive relief. (*See id* at 17–20.) In opposition, Ross argues that she suffered an injury in fact sufficient to support standing to bring her claims, but "concedes her claim for injunctive relief." (MTD Opp. at 2.)

For the reasons set forth below, the Court finds that Ross has suffered an injury in fact supporting standing to bring claims for damages on behalf of herself and members of the proposed Class who purchased Bare Bones Organic Chicken Bone Broth. However, Ross lacks standing to pursue damages claims on behalf of putative class members who purchased a Barebones bone broth product other than Bare Bones Organic Chicken Bone Broth. Furthermore, in light of the fact that Ross "concedes" the injunctive relief claims, the Court understands that Ross has voluntarily withdrawn any claims for injunctive relief brought on behalf of herself or members of the proposed class, and such claims are therefore dismissed as moot.[1]

First, the Class Action Complaint sufficiently alleges that Ross suffered an injury in fact in order to pursue damages claims under Section 349 and Section 350. To bring such claims, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). A plaintiff satisfies this requirement by alleging that "the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." *Wargo v.*

---

[1] To the extent that Ross did not voluntarily withdraw the injunctive relief claims by "conced[ing]" them, such claims must be dismissed for lack of standing due to the Class Action Complaint's failure to allege any facts suggesting any ongoing or future harm as required for standing to bring prospective relief claims. *See generally*, Compl.; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial"); *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (where a "plaintiff[] seek[s] injunctive or declaratory relief, they annot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future"). The Class Action Complaint fails to allege that Ross plans to purchase Bare Bones Organic Chicken Bone Broth in the future as required to even suggest that she may suffer future injury from the alleged deceptive labeling practices.

*Hillshire Brands Co.*, 2022 WL 1204652, at *5 (S.D.N.Y. 2022). Here, the Class Action Complaint explicitly alleges that Ross "would not have purchased Defendant's Bone Broth Product—or would not have paid as much as [she] did to purchase it—had Defendant" not engaged in its allegedly misleading labeling practice. (Compl. ¶ 10; *see also id.* ¶¶ 8–13 (alleging that consumers purchase Barebones' products because of the misleading labels).) Accordingly, the Class Action Complaint sufficiently alleges that Ross suffered an actual injury in fact traceable to Barebones that supports standing to pursue Section 349 and Section 350 claims for damages in the amount of overpayment. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring demonstration of injury in fact for standing as well as traceability—the existence of a "causal connection between the injury," and a showing that it is "likely as opposed to merely speculative" that the alleged injures "will be redressed by a favorable decision").

Second, Ross has standing to pursue her damages claims for fraud based on the same allegations. "The elements of a fraud cause of action consist of a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016). Here, the allegation that Ross "would not have purchased Defendant's Bone Broth Product—or would not have paid as much as [she] did to purchase it—had Defendant" not engaged in its allegedly false and deceptive labeling practice (Compl. ¶ 10) sufficiently alleges that she suffered an injury in fact supporting standing to pursue damages for common law fraud.

Third, Ross lacks standing to pursue any claims on behalf of proposed class members who purchased a Barebones' broth product other than Bare Bones Organic Chicken Bone Broth, which she allegedly purchased in or around May 2025. (*Id.* ¶ 13.) Class standing requires plausible allegations "(1) that [the plaintiff] personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal quotation omitted). "Accordingly, courts in this Circuit have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws for products that [s]he did not purchase, so long as the products and the false or deceptive manner in which they were marketed are sufficiently similar to the products that the named plaintiff did purchase." *Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450, 454 (S.D.N.Y. 2022). Here, Class Action Complaint alleges that Ross brings claims "on behalf of purchases or Bare Bones Broth products" without including any specific allegations about products other than Bare Bones Organic Chicken Bone Broth. (Compl. ¶ 1; *id.* ¶¶ 13) Without any specific allegations related to these other products, it is impossible for the Court to conclude that the labeling on any products other than Bare Bones Organic Chicken Bone Broth "implicates the same set of concerns as the conduct alleged to have caused injury" to Ross. *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162. Accordingly, any claims by Ross on behalf of proposed Class members who did not purchase Bare Bones Organic Chicken Bone Broth are dismissed under Rule 12(b)(1) for lack of standing.

Accordingly, Ross has standing to pursue Section 349, Section 350, and common law fraud claims for damages on behalf of herself and members of the proposed Class who purchased Bare Bones Organic Chicken Bone Broth. However, for the reasons explained in the R&R, all of these claims are dismissed with prejudice under the doctrine of federal preemption. (*See* R&R at 5–12.)

***

Accordingly, for the reasons set forth in this Order, Barebones' motion to dismiss the Class Action Complaint with prejudice is GRANTED under Rules 12(b)(1) and 12(b)(6) as set forth above and in the R&R. All claims in this action are therefore dismissed, and the Clerk of Court is respectfully requested to enter judgment in this case.

Dated: Central Islip, New York
September 22, 2026

*/s Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------X

JANET ROSS, on behalf of herself and others similarly situated,

Plaintiff,

v.

BAREBONES VENTURES, LLC,

Defendant.

---------------------------------------------------------X

**REPORT AND RECOMMENDATION**

25-CV-3929 (NJC) (LGD)

**LEE G. DUNST**, Magistrate Judge:

Plaintiff Janet Ross ("Ross" or "Plaintiff"), on behalf of herself and others similarly situated, commenced this action against Defendant Barebones Ventures, LLC ("Barebones" or "Defendant"), alleging violations of N.Y. Gen. Bus. Law ("NYGBL") §§ 349, 350 and a common law fraud claim in connection with Defendant's purported mislabeling of chicken broth. *See generally* Electronic Case Filing ("ECF") No. 1 (Complaint). Barebones filed a Motion to Dismiss on November 13, 2025, arguing that, among other things, Plaintiff's claims are preempted by the federal Food, Drug, and Cosmetic Act (the "FDCA"), as amended by the Nutrition Labeling and Education Act (the "NLEA"). *See* ECF No. 18 (the "Motion"); *see also* 21 U.S.C. §§ 343 *et seq*. On May 15, 2026, District Judge Nusrat J. Choudhury referred the Motion to the undersigned for a Report and Recommendation. *See* Electronic Order, dated May 15, 2026.

For the reasons below, the undersigned finds that Plaintiff's claims are federally preempted. Accordingly, the undersigned recommends that Defendant's Motion be granted, the Complaint dismissed without leave to amend, and the action dismissed with prejudice.

## I. BACKGROUND

### A. Factual Background[1]

Barebones is a Delaware limited liability company with its principal place of business in San Diego, California. *See* ECF No. 1 ¶ 14. Significant here, Barebones manufactures, markets, and sells "Organic Chicken Bone Broth" (the "Broth"). *See id.* ¶ 1. The Broth's packaging indicates that the Broth is "made with pasture-raised chicken bones" and contains "20g of protein per serving." *See* ECF No. 1, Figure 1. The Complaint provides the following image of the Broth's frontside packaging:




*Id.* Plaintiff claims that this frontside packaging is misleading because it states that the Broth contains "20g of protein per serving," even though the Broth is sold in a single-serving container.

[1] These facts are taken from Plaintiff's Complaint and undisputed unless otherwise noted. *See* ECF No. 1. They are assumed to be true for the purposes of Defendant's Motion, and all reasonable inferences are drawn in Plaintiff's favor. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019).

*See id.* ¶ 6.

The Complaint also includes the following image of the Broth's nutrition facts panel:




*See id.*, Figure 3. The nutrition label states that the Broth's serving size is "1 container," which includes 454 grams of Broth. *See id.* Plaintiff notes that Food and Drug Administration ("FDA") guidance establishes a 245-gram standard serving size for soups (which includes broth), or 8 ounces. *See id.* ¶ 4. According to Plaintiff, consumers would view the Broth's frontside statement "20g of protein per serving" in light of the 245-gram standard serving size for soups, not the Broth's 454-gram single-serving size. *See id.* ¶¶ 6–7. In other words, Plaintiff claims that this packing implies that the Broth contains multiple servings and more than 20 grams of protein. *See id.* ¶¶ 2, 7, 9.

The Complaint alleges that Barebones "capitalizes" on consumers' increasing desire for high-protein products. *See id.* ¶ 8. Plaintiff cites reporting "that protein remains the 'most universally sought ingredient/nutrient in consumers' approaches to food.'" *See id.* (quoting CARGILL, THE PROTEIN PROFILE: THE 2025 PRIMER FOR PROTEIN TRENDS AND TIPS 5 (2025) https://www.cargill.com/doc/1432277049818/the-2025-protein-profile.pdf [https://perma.cc/J9N6-ZASB]). Plaintiff thus concludes that "reasonable consumers seeking

higher protein content in their food products will choose Defendant's [Broth] over other similar products if they rely on the misleading representation that its protein per standard serving is comparatively higher." *Id.* ¶ 9.

Ross alleges that she purchased one container of Defendant's Broth from a Stop & Shop in May 2025. *See id.* ¶ 12. When she purchased the Broth, Ross claims that she saw the statement "20g protein per serving" and believed that it contained a "heightened amount of protein." *Id.* Had she known that the entire Broth container had 20 grams of protein, Ross maintains that "she would not have purchased the [Broth] or would have paid significantly less for it." *Id.* However, Plaintiff concedes that the protein content is labeled as "20 grams on the front and back of the packaging," and the top of the back of the packaging states, "Serving size 1 container." *Id.*, at ¶ 7, Figures 4–5.

**B. Procedural Background**

Plaintiff commenced this putative class action lawsuit on July 15, 2025. *See generally id.* She seeks to represent classes of consumers in New York and nationwide who have purchased Defendant's Broth. *See id.* ¶¶ 19–20. Plaintiff asserts claims for violations of NYGBL §§ 349, 350 and common law fraud (collectively, the "state law claims"). *See id.* ¶¶ 26–53; *see also* N.Y. Gen. Bus. Law § 349 (proscribing "Unfair, deceptive, or abusive acts and practices"); *id.* § 350 (outlawing "false advertising"). Plaintiff requests damages, restitution, prejudgment interest, attorney's fees, costs, and injunctive relief. *See* ECF No. 1 ¶¶ 36, 47, 53.

On November 13, 2025, Barebones moved to dismiss this action with prejudice and without leave to amend Plaintiff's Complaint. *See* ECF No. 18. Ross subsequently withdrew her request for injunctive relief. *See* ECF No. 18-2 at 2 n.1.

## II. LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Dawkins v. Schott NYC Corp.*, No. 22-CV-3617, 2023 WL 6283285, at *2 (E.D.N.Y. Sept. 26, 2023) (quoting *Iqbal*, 556 U.S. at 678). In resolving a motion to dismiss, "[t]he court accepts as true all well-pleaded factual allegations in the complaint, [and] draws all reasonable inferences in favor of the nonmoving party." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (internal quotations and citations omitted).

Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks and citation omitted). Claims "providing only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" must be dismissed. *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 129 (E.D.N.Y. 2018) (quoting *Twombly*, 550 U.S. at 550).

## III. DISCUSSION

As explained below, Plaintiff's state law claims concern label statements about protein content that are governed by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.* (1938), as amended by the Nutrition Labeling and Education Act ("NLEA"), Pub.L. No. 101–535, 104 Stat. 2353 (1990). Plaintiff's state law claims would impose labeling obligations on Defendant that differ from the FDCA's requirements, such that the claims are federally

preempted. *See Colella*, 348 F. Supp. 3d at 134–37 (dismissing certain state law claims related to "Net Carbs" as permissible under, and thus preempted by, federal law). Because repleading would not resolve this preemption issue, the undersigned recommends that Defendant's Motion be granted, the Complaint dismissed without leave to amend, and the action dismissed with prejudice.

**A. Plaintiff's Claims are Express "Nutrient Content" Claims Under the FDCA**

As a threshold matter, the undersigned must address whether Plaintiff's state law claims are "nutrient content" claims governed by the FDCA. *See, e.g.*, *Davis v. Schwan's Consumer Brands, Inc.*, 742 F. Supp. 3d 400, 406 (S.D.N.Y. 2024) (finding that the "FDCA's express preemption clause d[id] not apply to [the] [p]laintiff's challenge to the statement 'Made with Real Butter' because the statement [was] not a 'nutrient content claim.'" (citations omitted)).

"The FDCA expressly forbids the misbranding of food in interstate commerce." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 279 (S.D.N.Y. 2014) (citing 21 U.S.C. § 331(a)-(c), (k)). Specifically, Section 343(r) of the FDCA "governs *optional* information about nutrition, that is, those claims that a food purveyor may *choose* to make about the nutrient content of its product." *Id.* (emphases in original). "Section 343(r)(1) of the FDCA states that '[a] food shall be deemed to be misbranded' (1) where a claim on the food's labeling either 'expressly or by implication . . . characterizes the level of any nutrient' required to be on the label and (2) where that claim does not conform to certain federal regulatory requirements." *Clemmons v. Upfield US Inc.*, 667 F. Supp. 3d 5, 13 (S.D.N.Y. 2023) (quoting 21 U.S.C. § 343(r)(1)(A)).[2] The FDCA and its related regulations provide extensive lists of required label

[2] Plaintiff cites *Clemmons* for the proposition "state law claims [that] supplement federal protections . . . are not preempted unless they directly conflict with [federal law] or require non-identical labeling." ECF No. 18-2 at 5 (citing *Clemmons*, 667 F. Supp. 3d at 14). *Clemmons* concerned state law claims related to plant butter with a label stating "Made With Olive Oil." 667 F. Supp. 3d at 11-12. Because the statement "Made with Olive Oil" did not

nutrients, including as "total fat," "cholesterol," "sodium," and "protein." *See* 21 C.F.R. § 101.9(c) (listing nutrients that may or must be included on a nutrition label); *see also* 21 U.S.C. § 343 (listing "total protein," among other nutrients, as a required label nutrient).

The FDA has enacted regulations for various types of Section 343(r) claims, including "express" and "implied" nutrient content claims. *See* 21 C.F.R. §101.13(b)(1)-(2) (defining express and implied nutrient content claims); *see also Reyes v. Upfield US Inc.*, 694 F. Supp. 3d 408, 426 (S.D.N.Y. 2023) (describing "expressed" and "implied" nutrient content claims). "An express nutrient-content claim is a direct statement about the level or range of a nutrient in a food, such as 'low sodium' or '100 calories.'" *Ackerman v. Coca-Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *3 (E.D.N.Y. July 21, 2010) (quoting 21 C.F.R. §101.13(b)(1)). An "implied" nutrient content is a statement that:

> (i) Describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or
>
> (ii) Suggests that a food, because of its nutrient content, may be useful in maintaining healthy dietary practices, where there is also implied or explicit information about the nutrition content of the food (e.g., "healthy").

21 C.F.R. §101.13(b)(2)(i-ii). State law claims regarding nutrient content are preempted if they fall into one of these categories and impose obligations different from the FDCA. *Clemmons*, 667 F. Supp. 3d at 14 ("[S]tate laws respecting nutrient content claims—the type of claim described in section 343(r)(1)—are preempted if they impose different labeling requirements

---

"impl[y] the presence of a certain amount of any label nutrient," the *Clemmons* court determined that the claims did not "depend[] on nutrient content" and were not preempted by the FDCA. *Id.* at 14-15.

This case stands on different footing. Plaintiff's claims concern protein content, which is a label nutrient. *See* ECF No. 1 ¶ 1 ("The marketing and advertising of the [Broth] contains misleading claims relating to the net weight of the Product, the serving size of the Product, and the *amount of protein* in the Product") (emphasis added); *see also* 21 C.F.R. § 101.9(c)(7) (listing "protein" as a mandatory and voluntary label nutrient). *Clemmons* does not militate against a finding of preemption here.

from [the FDCA]."); *but see Ackerman*, 2010 WL 2925955, at *7 (explaining that "claims based on statements not falling into [Section 343(r)'s] categories are not preempted").

Plaintiff alleges that the Broth's front label statement "20g protein per serving" is misleading to a reasonable consumer. *See* ECF No. 1 ¶¶ 7, 9. This statement directly addresses a label nutrient level—20 grams of protein per serving—and adds information beyond what's required for the Broth's nutrition panel. *Cf. New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009) ("Section 343(q), entitled '[n]utrition information,' addresses mandatory information on nutrients." (quoting 21 U.S.C. § 343(q))); 21 U.S.C. § 343(q)(1)(D) (requiring that a nutrition panel state, among other things, the "total protein contained in each serving size or other unit of measure"). Put differently, Plaintiff challenges an express statement about the Broth's protein content, meaning that federal law governs Plaintiff's state law claims. *See Colella*, 348 F. Supp. 3d at 131 ("The NLEA, which amended the FDCA . . . regulates the making of claims about the *nutrient content* of foods." (emphasis added)). As detailed below, those claims impose obligations beyond the FDCA and are preempted.

**B. Plaintiff's Express Nutrient Content Claims Impose Obligations Inconsistent with the FDCA and Are Federally Preempted**

Plaintiff argues that her nutrient content claims are consistent with the FDCA's requirements. *See* ECF No. 18-2 at 4–6. The undersigned disagrees.

Under the Supremacy Clause of the United States Constitution, "state and local laws that conflict with federal law are 'without effect.'" *Jackson-Mau v. Walgreen Co.*, 652 F. Supp. 3d 349, 355 (E.D.N.Y. 2023), *aff'd*, 115 F.4th 121 (2d Cir. 2024) (quoting *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010)). "There are three types of preemption: express, field, and conflict preemption." *Davis*, 742 F. Supp. 3d at 405. "Express preemption occurs when congressional enactments explicitly preempt state law, and its scope is

determined by [the] preempting language's plain meaning." *Jackson-Mau*, 652 F. Supp. 3d at 355 (internal quotation marks and citations omitted). State law is subject to field preemption if it "regulates conduct in a field that Congress intended the federal government to occupy exclusively." *Koenig*, 995 F. Supp. 2d at 283. Finally, "conflict preemption occurs when local and federal laws conflict in such a way that a party cannot comply with both or the local law is an obstacle to the achievement of federal objectives." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 179 (E.D.N.Y. 2018), *aff'd sub nom. Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701 (2d Cir. 2020).

The NLEA, which amended the FDCA, aimed to standardize the definitions of all nutrient content claims. *Ackerman*, 2010 WL 2925955, at *3 (noting that the NLEA, among other things, "standardized the definitions of all nutrient content claims"). Specifically, NLEA added an express preemption provision covering Section 343(r) nutrient content claims:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title, except a requirement respecting a claim made in the label or labeling of food which is exempt under section 343(r)(5)(B) of this title.

21 U.S.C. 343-1(a)(5); *see also Hughes v. Ester C Co.*, 99 F. Supp. 3d 278, 283 (E.D.N.Y. 2015) (noting that "[t]he NLEA added a preemption provision to the FDCA"). "A requirement is 'not identical' to those under Section 343(r) if, 'the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] (i) [a]re not imposed by or contained in the applicable provision (including any implementing regulation); or (ii) [d]iffer from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section [341] or [343] of the act.'"

*Colella*, 348 F. Supp. 3d at 132–33 (quoting 21 C.F.R. § 100.1(c)(4)). Simply put, Section 343(r) nutrient content claims are preempted if they impose labeling requirements that differ from those in federal law. *See Davis*, 742 F. Supp. 3d at 406 (citing *Clemmons*, 667 F. Supp. 3d at 14).

The FDCA's implementing regulations provide that "the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). These regulations also require that nutritional labels calculate serving sizes based on "reference amounts" typically consumed in one meal. *See* 21 C.F.R. § 101.12(a). Products that are individually packaged, sold, and "contain[] less than 200 percent of the applicable reference amount" must be treated as a "single-serving container, and the entire content of the product must be labeled as one serving." 21 C.F.R. § 101.9(b)(6). As relevant here, the applicable reference amount for a single serving of soup is 245 grams. *See* 21 C.F.R. § 101.9(b)(6). Thus, individually packaged and sold soup products must be labeled as single-serving containers if they contain 490 grams (200 percent of the applicable reference amount of 245 grams) of soup.

Here, the Broth's nutrition label indicates that the container has 454 grams of Broth—less than 200 percent of the applicable reference amount for soup (to wit, 490 grams). *See* ECF No. 1, Figure 3. The Broth container is therefore properly labeled as one serving that contains 20 grams of protein.[3] *See id.*; *see also* 21 C.F.R. § 101.9(c)(7) (requiring that a nutrition label contain "[a] statement of the number of grams of protein in a serving"). So long as the Broth's

[3] The parties do not dispute that the Broth is a "soup" under the FDCA's implementing regulations. *See* ECF No. 18-1 at 5 (referencing the 245-gram applicable reference amount for soups to argue that the Broth is "correctly labeled as one serving per container"); ECF No. 18-2 at 5 (relying on the 245-gram applicable reference amount for soups).

packaging does not include any "false or misleading" statements, it complies with the FDCA's regulatory scheme. 21 C.F.R. §101.13(i)(3).

Plaintiff maintains that the "core of [her] complaint is that Defendant used a technical FDA guidance loophole governing 'single-serving' containers to inflate perceived protein content." ECF No. 18-2 at 5; *see also id.* at 5 ("The alleged deception is contextual . . . rather than violating a direct labeling rule."). Plaintiff argues that a "reasonable consumer" would read the Broth's protein label statements in light of the 245-gram reference amount used for soups. *See* ECF No. 1 ¶ 9; ECF No. 18-2 at 5 (claiming that the Broth's labeling "deliberately confus[es] consumers accustomed to the standard serving size . . . 245g for soups"). Plaintiff further claims that a "reasonable consumer, like [herself], led to believe a standard serving would amount to 20 grams of protein—when in actuality, the entire container amounts to 20 grams." ECF No. 1 ¶ 9. Moreover, Plaintiff argues that the Broth's packaging violates state law by failing to "clarify[] the amount of protein in the actual reference amount" for soup. ECF No. 18-2 at 6.

Plaintiff's arguments are unpersuasive and, in any event, would impose obligations beyond the FDCA's requirements. The FDCA's implementing regulations permit, but do not require, that the Broth's labeling include additional information about protein content based on the 245-gram reference amount. *See* 21 C.F.R. 101.9(b)(6) ("[F]or a product that is packaged and sold individually that contains more than 150 percent and less than 200 percent of the applicable reference amount, the Nutrition Facts label *may voluntarily provide* . . . an additional column that lists the quantitative amounts and percent Daily Values per common household measure that most closely approximates the reference amount." (emphasis added)); *see also* ECF No. 1 ¶ 5 (conceding that the "FDA permits manufacturers of single-serving containers that

contain more than 150% and less than 200% of their items' [applicable reference amount] to *voluntarily provide* an additional column in the Nutrition Facts label." (emphasis added)).[4] Plaintiff's state law claims would force Defendant to list this voluntary information, transforming a discretionary disclosure into a mandatory regulatory requirement. ECF No 18-2 at 6 (claiming that "there is no federal regulation which prevents Defendant from complying with state law" and calculating protein content based on "the reference amount of soup"). Accordingly, Plaintiff's state law claims of misleading labeling impose obligations differing from—and therefore are preempted by—federal law. *See Colella*, 348 F. Supp. 3d at 132–33; *Davis*, 742 F. Supp. 3d at 406.[5]

**C. Repleading Will Not Revive Plaintiff's Claims**

Defendants argue that Plaintiff's state law claims are "federally preempted," "fail as a matter of law," and should be "dismissed without leave to amend." ECF No. 18-1 at 1, 6. The

[4] The Broth's 454-gram weight is 1.85 times greater than (or 185 percent of) the applicable reference amount for soups (245 grams). *See* ECF No. 1, Figure 3.

[5] It is well-settled that "there is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." *Hallmark Licensing, LLC v. Dickens, Inc.,* No. 17-CV-2149, 2020 WL 6157007, at *7 (E.D.N.Y. Oct. 21, 2020) (quoting *Miller v. Metro. Life Ins. Co.*, No. 17-CV-7284, 2018 WL 59093477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) (further citations omitted)). "By extension, neither is a court required to address each and every case cited by a party in support of its position." *Id.* Thus, as the undersigned finds Plaintiff's claims are federally preempted, there is no need to address the balance of Defendant's arguments seeking to dismiss the case.

However, even if Plaintiff's state law claims were not federally preempted, the undersigned would recommend dismissal for failure to state a plausible claim for relief. Plaintiff assumes that a reasonable consumer would view the Broth's frontside statement "20g protein per serving," while ignoring the nutrition facts panel. *See Telesco v. Starbucks Corp.*, 682 F. Supp. 3d 397, 404 (S.D.N.Y. 2023) ("A consumer . . . cannot pick and choose only information on the bottle that supports their argument as to why they were purportedly misled."); *Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 211 (E.D.N.Y. 2016) ("In determining whether a reasonable consumer would be misled by the size of the packages, the Court must consider the entire context of the package." (cleaned up)). The Broth's frontside statement "20g protein per serving," read alongside the nutrition facts panel, is not misleading—the Broth is packaged in a single-serving container with 20 grams of protein. *See Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) ("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim.").

undersigned agrees.

Courts should permit amendment of deficient claims "when justice so requires." FED. R. CIV. P. 15(a)(2); *see also Melendez v. ONE Brands, LLC*, No. 18-CV-06650, 2020 WL 1283793, at *9 (E.D.N.Y. Mar. 16, 2020) ("[A]fter the expiration of time for amendment as a matter of course, the court should freely give leave when justice so requires." (internal quotation marks, citations, and brackets omitted)). However, dismissal without leave to amend is appropriate where re-pleading would be futile. *See Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015) ("Proposed amendments are futile if they would fail to cure deficiencies or state a claim under Rule 12(b)(6)." (internal quotation omitted)); *Mule v. Dep't of Educ. of City of New York*, 797 F. Supp. 3d 9, 44 (E.D.N.Y. 2025) ("A court may . . . dismiss claims without leave to amend where the proposed amendments would be futile, or where a plaintiff has failed to specify how it could cure its pleading deficiencies." (internal quotation marks and citations omitted)).

As discussed above, Defendant's Broth labeling is permissible under the FDCA. *See supra* Section III.B. Any construction of Plaintiff's state law claims—which seek to penalize federally permissible labeling—would be preempted by the FDCA. *Daniel v. Tootsie Roll Indus.*, LLC, No. 17-CV-7541, 2018 WL 3650015, at *4 (S.D.N.Y. Aug. 1, 2018) ("[I]f a product's packaging does not run afoul of federal law governing food labeling, no state law claim for consumer deception will lie."). Consequently, Plaintiff's state law claims should be dismissed without leave to amend and this action dismissed with prejudice. *See, e.g., Melendez v. ONE Brands, LLC*, No. 18-CV-06650, 2020 WL 1283793, at *9 (E.D.N.Y. Mar. 16, 2020) (denying leave to amend as futile a NYGBL claim that was preempted by the FDCA).

## IV. CONCLUSION

For the reasons above, the undersigned recommends that Defendant's Motion be granted,

the Complaint dismissed without leave to amend, and the action dismissed with prejudice.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Choudhury. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154–55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

**SO ORDERED**:

Dated: Central Islip, New York
July 28, 2026

/s/ Lee G. Dunst
LEE G. DUNST
United States Magistrate Judge